## Knuckles v. Board of Education of Bell County.

(Decided March 4, 1938.)

432

E. B. WILSON for appellant.

N. R. PATTERSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

For a time immediately prior to January 1, 1936, the appellant and plaintiff below, J. F. Knuckles, served Bell county, Ky., as superintendent of its public schcols under appointment by the apellee and defendant below, Board of Education of that county. He was succeeded in that office at the beginning of the year 1936 by one Mills. On the 13th of January of the same year, the County Board of Education met with all of its members present, and, upon motion of its acting chairman, plaintiff was employed, or appointed, "assistant superintendent" of the public schools of the county for a period ending June 30, 1938, and there was included in the motion, which was carried, this language: "He is to serve in the capacity of principal at Kettle Island for the remainder of this school year and to serve as directed by Superintendent and Board of Education until June 30, 1938. Same being recommended by Superintendent Mills—Mr. Knuckles is to receive $175.00 per month for his services." The minute of that action of the board at that meeting was spread at large upon the board's records, but neither it, nor any of the proceedings taken by the board at that meeting, were signed by any of the officers of the board until after the convening of its next meeting, which was held on February 7, 1936. At the latter meeting the question came up of the approval of the minutes of the prior one of January 13, when it was moved that orders Nos. 5 and 6

made at the former meeting should not be approved, but should be expressly rescinded and set aside. Order No. 5, so referred to, was the one apointing plaintiff assistant superintendent; while order No. 6 was a similar one appointing one W. M. Slusher as another assistant superintendent.

The motions to disapprove those former unsigned orders prevailed at the meeting of February 7, 1936, but at that same meeting a motion was made, and carried unanimously, to employ plaintiff ''as principal of Kettle Island (school) until the end of this year 1935-36, at a salary of $150.00 per month.'' At a later meeting of the board in that year, and on May 26, Knuckles was employed as a teacher for the next year in the public schools of the county. Immediately following the orders of February 7, plaintiff assumed his duties as principal of the Kettle Island School and taught it throughout the ensuing term. We also gather from the record that he began to teach—either at that or some other school in the county—at the beginning of the scholastic year 1936-37. On September 3, 1936, he filed this action in the Bell circuit court against the defendant board, seeking to recover a personal judgment against it in the amount of $841.94, being the excess amount of his alleged salary as assistant superintendent at $175 per month from the time he was so allegedly elected to that place, over and above the amount that had been paid to him as principal or teacher in the public schools of the county. Defendant's demurrer to the petition was overruled, and in its answer it manifested with particularity the facts as we have related. The parties signed a stipulation embodying those facts which was made a part of the record by joint motion, and the cause was then submitted for judgment, when the court dismissed plaintiff's petition, followed by this appeal by him seeking a reversal thereof.

Two grounds were relied on in the court below and are argued here by defendant's counsel as sustaining the judgment of the court, and which are: (1) That the duties of principal or teacher in any of the common schools of the county are incompatible with those of assistant superintendent of the county schools, and that when plaintiff accepted and began to discharge the duties of teacher or principal he forfeited the position of assistant superintendent, even if he had theretofore

been validly elected to that place; and (2) that he was never validly elected to that place, because the order of January 13, 1936, purporting to have done so was never verified by any of the officers of the board on its records, and that before such verification the attempted order, so appointing or electing him as assistant superintendent, was set aside and rescinded. Plaintiff's counsel vigorously combats both of those grounds in his argument, and our task is to determine whether or not either of them is available to sustain the trial court's judgment; for if that be true it becomes immaterial to determine the legal effects of the other one. We will first dispose of ground (1).

Learned counsel for plaintiff in his laborious efforts to convince us that the judgment appealed from is erroneous, if based on ground (1), cites sections 165 and 237 of our Constitution, as well as section 3746 of Baldwin's 1936 Edition of Carroll's Kentucky Statutes, and endeavors to point out and establish by former opinions of this court that the two positions of assistant county superintendent of public schools, and principal or teacher in the schools of that same county, are not comprehended by either of the sections of the statute or the Constitution referred to, and that they are, therefore, not incompatible within the purview of either of those constitutional or statutory provisions. We do not deem it necessary to either catalogue the cases so relied on to establish that contention, nor to analyze their holdings in order to determine whether or not they sustain it, since the incompatibility in office, as designated or specified in those citations—of both constitutional and statutory provisions—are not the exclusive instances of incompatibility in office so as to cause the acceptance of the later one to ipso facto vacate the former one, because of incompatibility of public duties to be performed by the incumbent in the two respective public positions involved.

The section of the statute referred to—as well as the two sections of the Constitution relied on—do not purport to create or embrace all cases of incompatibility in office; but only to designate actual or supposed incompatibilities that the lawmakers (constitutional conventions or General Assembly) concluded were or should be such, and to forbid them thereafter as long as such fiats of the law remained in existence. The first

evidence of that nonexclusive interpretation is found in section 3744, just preceding the one supra. It says: "The acceptance by one in office of another office, or employments incompatible with the one he holds, shall operate to vacate the first." The text in 22 R. C. L. 412, sec. 54, composing a part of the treatise on "Public officers," says: "The doctrine of the incompatibility of public offices is imbedded in the common law and is of great antiquity. It rests on the view that office holders are inherently subject to regulations and conditions. While a private person may accept as many employments as he can procure, it has always been held that the holding of a public office may render it improper for the holder to accept another public office."

On the next page (413, sec. 55) the compiler of the text undertakes the difficult task of defining common-law "incompatibility" of offices, in which it is pointed out that incompatibility is declared when the public functions to be performed are inconsistent, the one with the other, and where "the nature and duties of the two offices are such as to render it improper from consideration of public policy for one incumbent to retain both." The writer then explains that the difficulty with such general definitions is in determining what is "inconsistency," as employed in the definition, and also in determining the limitations upon the phrase "public policy" as employed in the definition given in the text. It is then said in the same section: "As a general rule when it comes to stating what constitutes incompatibility the courts evade the formulation of a general definition and content themselves with a discussion of specific cases and the particular facts which, in separate instances, have been looked on as creating incompatibility."

However, the next section (56 on page 414) says: "One of the most important tests as to whether offices are incompatible is found in the principle that the incompatibility is recognized whenever one is subordinate to the other in some of its important and principal duties, or is subject to supervision by the other, or where a contrariety and antagonism would result in the attempt by one person to discharge the duties of both. Under this principle two offices are incompatible where the incumbent of one *has the power to remove* the incumbent of the other, though the contingency on which

the power may be exercised is remote, and it also exists where the incumbent of one office *has the power of appointment* as to the other office. This rule has been applied to prevent a board from appointing one of their own members to an office which is subordinate to such board. Because of the subordinate relationship it has also been held that the offices of member of a city board of education and clerk of the same board are incompatible." (Our emphasis.) The texts of all other lawwriters on the subject are to the same effect, since the principles announced are of universal recognition, and for which reason we will not incumber the opinion by the insertion of additional ones. Some of our more recent cases supporting the cited and inserted texts are Hermann v. Lampe, 175 Ky. 109, 194 S. W. 122, 126; Coleman, Auditor v. Hurst, 226 Ky. 501, 11 S. W. (2d) 133; Middleton v. Middleton, 239 Ky. 759, 40 S. W. (2d) 311; Barkley v. Stockdell, 252 Ky. 1, 66 S. W. (2d) 43; Talbott, Auditor, v. Park, 256 Ky. 534, 76 S. W. (2d) 600; Polley v. Fortenberry, 268 Ky. 369, 105 S. W. (2d) 143, and many others cited in those opinions.

In the Hermann Case the involved positions alleged to be incompatible were found by us not to be so under our statutory or constitutional provisions, supra, but we proceeded to inquire and to determine whether they were incompatible at common law and to come within the general provisions of section 3744, supra (heretofore inserted), forbidding the holding of *incompatible* public positions, and prescribing that the acceptance of an incompatible public position by an incumbent already in office would operate as creating a vacancy of the first one. In pursuing that investigation we quoted and approved the text in 29 Cyc. 1382, which is in substance the same as that from Ruling Case Law, supra, and which states that the two positions would be incompatible *at common law* "where the incumbent of one office has the power to remove the incumbent of another, or to audit the accounts of another, or to exercise a supervision over another," etc. Later in the opinion we cited and approved the holding of the court in the case of People v. Green, 46 How. Prac. 169, saying that incompatibility at common law existed between two public positions "when, their being subordinate and interfering with each other, it induces a presumption that they cannot be executed with impartiality and honesty."

The Hermann opinion then proceeds to say: "This seems to be a sound rule to be adopted in determining whether an *employment* which one accepts is incompatible with the duties of an office which he [already] holds." (Our italics.)

The other cited and later rendered domestic cases—with others referred to in them—do not depart from the pronouncements of the Hermann opinion. On the contrary, we have continued to approve them on all occasions when the question was presented. Not only is that true with reference to what constitutes *incompatibility,* but it is likewise true as to the statement hereinbefore made that the designated incompatibilities of offices specifically pointed out in the sections of the Constitution referred to, and in the cited sections of our statute, are not exclusive, but were intended to be and are only specific designations to be observed by other public functionaries, including courts, when questions of incompatibility arise. Furthermore, the same opinions, as well as the texts, apply the consequences of incompatibility (either at common law or under the Constitution or statutes) not only as between public positions expressly designated as an "office," but such incompatibility is also applied, with the same consequences, as between what might be termed public *employees* when the functions to be performed by the incumbent partakes of the nature of the duties and functions of an officer, although the incumbent might be designated as only an "employee," or he may be so regarded by necessary inference.

Such being the condition of the law, a brief examination into the duties of the two positions of "assistant superintendent of county schools," and that of *teacher* or *principal* in one of the public schools of the same county, will now be undertaken. The only place in our entire statutes wherein any reference is made to the position of assistant superintendents of public schools, is in section 4399-34 of the statutes, supra, saying: "The board of education may, on the nomination of the superintendent of schools, appoint as many assistant superintendents as it deems necessary, whose compensation shall be fixed by the board and who may be removed for cause by the superintendent, with the approval of three members of the board of education." That sentence is the only one in our statutory law that we have been able

to find, or to which we have been cited, wherein any sort of reference is made to the position of "assistant county superintendent." Hence, there exists no statute expressly defining his duties. In such cases it is the undoubted duty of courts to conclude that he was to perform the duties of a "deputy" superintendent, and to treat the words "assistant" and "deputy" as being synonymous in meaning when applied to the position under consideration. Mr. Bouvier in his law dictionary in defining the word "deputy" says: "In general, a deputy has power to do every act which his principal might do; but a deputy can not appoint a deputy. See Abrams v. Ervin, 9 Iowa 87; Lewis v. Lewis, 9 Mo. 183, 43 Am. Dec. 540; Confiscation Cases, 20 Wall. 92, 111, 22 L. Ed. 320." Mr. Black in his law dictionary, in stating the meaning and scope of the word, says: "A deputy has, in law, the whole power of his principal. Wharton." We approved such definitions as applied to deputy clerks in the case of Ellison v. Stevenson, 6 T. B. Mon. 271. In that opinion, prepared for the court by Judge Bibb, it is said: "It cannot be maintained as a legal principle, that the deputy, lawfully constituted as such, has less power than the principal." The only limitation upon such definitions is, that we have held in a number of cases that where quasi judicial authority is conferred on a principal officer it, in at least some instances, may not be exercised by a deputy officer; but, with the exception of the performance of such quasi judicial functions, we have consistently held that the duties of a deputy or an assistant official are circumscribed by the same boundaries as those possessed by his principal.

Applying that principle to the position of assistant county school superintendent (in the absence of contrary statutory provisions) it must be assumed that an assistant county school superintendent may perform all of the public duties imposed upon the principal superintendent. Many of those duties in their nature are supervisory of the conduct of teachers in the schools under the jurisdiction and control of the superintendent. See section 4399-34 supra. In that section it is enacted as a part of his duties that "the superintendent shall have the power to suspend any teacher or other employee for cause deemed by him sufficient, and the board of education shall take such action upon the restoration

or removal of such person as it may deem proper.'' There are many other imposed duties on the county superintendent requiring supervisory action by him over the teachers in his county which are unnecessary to specify in this opinion, since those that we have referred to are sufficient to establish the fact that the positions of superintendent (and also assistant superintendent) are incompatible with that of teacher in the public schools. Illustrating—if the assistant superintendent may exercise the authority conferred on his principal, then in this case plaintiff, *as assistant superintendent,* would be his own supervisor *as teacher* in the schools of the county, and, though it might become necessary to remove him as teacher, yet his interest in holding that position would forbid him, as assistant superintendent, to take action against himself as teacher. No greater incompatibility could scarcely exist, and without further lengthening of this opinion we conclude that ground (1), supra, is sufficient to uphold the judgment appealed from without the necessity of discussing or determining ground (2), and for which reason it will not be undertaken.

Wherefore, for the reasons stated, the judgment is affirmed.