OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



April 25, 2001

Mr. Jim Nelson
Commissioner
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. JC-0371

Re: Whether a school district trustee may serve as a volunteer teacher in the same district (RQ-0318-JC)

Dear Commissioner Nelson:

You have requested our opinion as to whether a member of a school district board of trustees may serve as a volunteer teacher in that district.[1] For the reasons explained below, we conclude that he may not do so.

You indicate that a member of the board of trustees of the Pearland Independent School District ("the District") wishes "to serve as a volunteer, unpaid, part-time history teacher at Pearland High School for one period a day (or, more appropriately, for ninety minutes every other day on a block schedule) for a single semester in the Fall of 2001."[2] The trustee would not be paid for his teaching duties, and he would not be required "to perform some of the traditional 'non-classroom' duties that teachers are assigned, such as lunch duty or hall duty, so his supervisory relationship with his principal would be minimal and limited solely to the classroom. In many ways, he would be treated more like a guest lecturer . . . than a full-time teacher."[3]

Incompatibility is an aspect of dual office holding. The doctrine prohibits a person from holding two positions simultaneously where one position might impose its policies on the other or subject it to control in some other way. See Thomas v. Abernathy County Line Indep. Sch. Dist., 290 S.W. 152, 153 (Tex. Comm'n App. 1927, judgm't adopted); Tex. Att'y Gen. Op. No. JM-129 (1984). Three branches of incompatibility have been recognized by the courts and this office: self-appointment, self-employment, and conflicting loyalties. See Ehlinger v. Clark, 8 S.W.2d 666, 674

---

[1]See Letter from Mr. Jim Nelson, Commissioner of Education, Texas Education Agency, to Honorable John Cornyn, Texas Attorney General (Nov. 29, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

[2]Letter from Mr. Christopher B. Gilbert, Bracewell & Patterson, L.L.P., to Mr. Jim Nelson, Commissioner of Education, at 1 (Nov. 2, 2000) (attachment to Request Letter) [hereinafter Bracewell & Patterson Letter].

[3]Bracewell & Patterson Letter, supra note 2, at 3.

(Tex. 1928); *Thomas*, 290 S.W. at 153; Tex. Att'y Gen. LO-95-029, at 2; Tex. Att'y Gen. LA-114 (1975). It is self-employment incompatibility that concerns us here.

Self-employment incompatibility was not fully recognized in Texas until a 1975 opinion of the Attorney General. It clearly derives, however, from the Texas Supreme Court's decision in *Ehlinger*, in which the court declared:

> It is because of the obvious incompatibility of being both a member of a body making the appointment and an appointee of that body that the courts have with great unanimity throughout the country declared that all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint.

*Ehlinger*, 8 S.W.2d at 674 (ruling that county judge could not be employed as attorney by the commissioners court over which the judge presided). In 1975, the Attorney General considered whether a public school teacher was barred by common-law incompatibility from serving as a member of the board of trustees of the district in which she was employed. Relying on *Thomas*, *Ehlinger*, and a 1973 case from the Supreme Court of Wyoming, this office said that "the common law doctrine of incompatibility prevents a public school teacher in Texas from serving at the same time as a member of the board of trustees for the employing district." Tex. Att'y Gen. LA-114 (1975) at 4. Subsequent decisions of the Attorney General have affirmed this conclusion. *See, e.g.*, Tex. Att'y Gen. LO-97-034, LO-90-045, LO-89-057, LO-89-002.

The District believes that these examples are distinguishable from the matter before us in several respects. In the first place, the District contends that the trustee's status as a *volunteer* teacher rather than an actual *employee* means that, in the present instance, self-employment incompatibility is not applicable. The trustee would not be paid a salary to teach and would be relieved of certain responsibilities imposed on other teachers.[4] In our opinion, however, compensation is not the key element of the rationale supporting self-employment incompatibility. Rather, it is the subordination of one position to the other.

In Attorney General Opinion JM-97 (1983), the Attorney General held that an individual was prohibited from simultaneously serving as both a junior college trustee and a member of the Coordinating Board of the Texas College and University System. In deciding that the positions were incompatible, JM-97 used the following test:

> One of the most important tests as to whether offices are incompatible is found in the principle that the *incompatibility is recognized whenever one is subordinate to the other in some of its important and principal duties, or is subject to supervision by the other*, or where a contrary and antagonism would result in the attempt by one person

---

[4]*See* Bracewell & Patterson Letter, *supra* note 2, at 1.

> to discharge the duties of both. Under this principle two offices are incompatible where the incumbent of one has the power to remove the incumbent of the other, though the contingency on which the power may be exercised is remote, and *it also exists where the incumbent of one office has the power* of appointment as to the other office, or to audit the accounts of another, or *to exercise supervision over another.*

Tex. Att'y Gen. Op. No. JM-97 (1983) at 2 (quoting *Knuckles v. Bd. of Educ.*, 114 S.W.2d 511, 514 (Ky. 1938) (emphasis added). Because members of a junior college governing board serve without compensation, the matter of compensation was irrelevant to the opinion's conclusion. *See* TEX. EDUC. CODE ANN. § 130.082(d) (Vernon Supp. 2001). In Attorney General Opinion JM-386 (1985), this office said that an alderman was barred from serving as a member of his city's police reserve because a statute gave the city council "considerable supervisory authority over members of the police reserve force and makes the force accountable to the city council." Tex. Att'y Gen. Op. No. JM-386 (1985) at 3. Because the statute permitted, but did not require, the municipal governing body to provide compensation to members of the police reserve force,[5] the payment of compensation was, once again, not a determining factor in the Attorney General's decision. *See id.* at 2.

Under the test of "supervision," we believe it is clear that the trustee is precluded from serving as a volunteer teacher. Section 11.201 of the Education Code makes it the duty of the superintendent of an independent school district to assume "responsibility for the assignment and evaluation of all personnel of the district other than the superintendent." TEX. EDUC. CODE ANN. § 11.201(d)(2) (Vernon 1996). Section 11.202 makes it the duty of a school principal to "assign, evaluate, and promote personnel assigned to the campus." *Id.* § 11.202(b)(5). And section 21.352 requires that teachers be evaluated "at least once during each school year." *Id.* § 21.352. In our opinion, the nature of the teaching profession, its statutory subordination to school and district administrative officials, and the significance that courts and this office have attached to *supervision* as the key to self-employment incompatibility, mean that the mere absence of compensation and certain non-teaching duties are not sufficient to permit a school district trustee to serve as a volunteer teacher in his district.

It has also been suggested that the temporary and intermittent nature of this arrangement precludes the applicability of common-law incompatibility. In Attorney General Opinion JM-847 (1988), this office said that a legislator was not barred from serving as a special commissioner in an eminent domain proceeding. As the opinion notes, "[j]udicial decisions and prior opinions of this office state as an essential element of an office that its duties are continuing in nature and not intermittent." Tex. Att'y Gen. Op. No. JM-847 (1988) at 3 (citing *Knox v. Johnson*, 141 S.W.2d 698, 700 (Tex. Civ. App.–Austin 1940, writ ref'd). In Attorney General Letter Opinion 96-081, the Attorney General concluded that an appraisal review board member was not ineligible to serve as an alternate election judge in a single municipal election. *See* Tex. Att'y Gen. LO-96-081, at 4. By

---

[5]*See* TEX. LOC. GOV'T CODE ANN. § 141.007 (Vernon 1999) (formerly Revised Civil Statutes, article 998a(e)).

contrast, in Attorney General Letter Opinion 96-145, this office said that a former district judge sitting by appointment held an "office," because he was "appointed for a 'term of court' rather than for one case only"; because he had, while sitting on assignment, "all the powers of a regular judge," and because, while serving, he had administrative as well as judicial responsibilities. Tex. Att'y Gen. LO-96-145, at 2. For those reasons, his service as judge was not merely intermittent, and as a result, he was prohibited from simultaneously serving as a part-time municipal judge.

It is not evident that these decisions involving intermittent, temporary duties are applicable to the situation you present, because all involve "offices," which teachers, whether volunteer or not, do not hold. Nevertheless, we doubt that the trustee's teaching position can reasonably be said to be intermittent. The trustee proposes to teach a regular class for a full semester, and there is nothing in the facts presented that would preclude his appointment to additional semesters. Even if his responsibilities are limited primarily to teaching, such duties clearly comprise the predominant element of that profession. In our opinion, a volunteer teacher in the circumstances described cannot be said to hold a position that is merely intermittent.

Finally, you contend that the situation here can best be described as one in which the trustee merely assumes the "additional duties" of a volunteer teacher.[6] This argument relies on the decision of this office in Attorney General Letter Opinion 98-036, in which the Attorney General said that a regent of Texas Southern University "does not violate the common-law doctrine of incompatibility by performing unpaid volunteer coaching services for a section of the football team." Tex. Att'y Gen. LO-98-036, at 5. The opinion declared that "[t]he opinions on this subject do not stand for the proposition that volunteers for state agencies are employees for purposes of 'self-employment' incompatibility." *Id.* at 3. In the Texas Southern case, the regent did "not appear to hold a position with the university nor to have been assigned duties by the board of regents but contribut[ed] his coaching assistance when needed." *Id.* at 3-4. Consequently, "[h]is voluntary coaching is more readily characterized as additional duties related to his office . . . than as a separate position subject [to] the common-law doctrine of incompatibility." *Id.* at 4 n.16. Consequently, "[t]his volunteer arrangement does not, in our opinion, provide sufficient occasion for conflict with the office of regent to invoke the common-law doctrine of incompatibility." *Id.* at 4.

Although we question the rationale of Letter Opinion 98-036 and its unnecessarily broad language, we need not overrule it because it is sufficiently distinguishable from the circumstances you describe. In the Texas Southern case, the regent had simply "volunteered to coach the kickers for the football team." *Id.* at 1. There is no evidence that his duties in this regard were those that were ordinarily performed by a compensated employee in a regular position. Neither is there evidence that his service as volunteer coach involved regular hours on specific days, or a specific period of time agreed upon in advance. In these respects, his coaching duties more closely

---

[6]*See* Bracewell & Patterson Letter, *supra* note 2, at 3-4.

resembled those of a "guest lecturer" in a classroom situation.[7]  More to the point, they had about them the unmistakable whiff of the informal.

By contrast, the trustee in the present instance proposes to teach a regular academic class during regular school hours, on specific dates, and for a particular length of time.  More importantly, he would be responsible for the instruction of public school students, with all that entails, in a course for which those students would receive credit toward high school graduation.  We believe that such a role is significantly different from that of the volunteer coach in the Texas Southern scenario.  The position of volunteer under the circumstances you describe is not vested in any particular with any lesser degree of significance than that of a regular teacher.

We conclude that the trustee of whom you inquire is barred by the common-law doctrine of incompatibility from simultaneously serving as a volunteer part-time teacher in a regular academic class for a single semester.

---

[7]*See* Bracewell & Patterson Letter, *supra* note 2, at 3.

## S U M M A R Y

A trustee of the Pearland Independent School District is barred by the common-law doctrine of incompatibility from simultaneously serving as a part-time volunteer teacher in a regular academic classroom for a single semester.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

SUSAN D. GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee